Filed 1/4/23  In re K.S. CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re K.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080842 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4615) |
| v. | |
| J.S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Conditionally affirmed and remanded with directions.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Dana Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and Appellant J.S. (Father) appeals from an order terminating his reunification services with regard to his children K.S., J.S., and M.S. (collectively referred to as the children). Father argues the order should be conditionally affirmed and remanded for compliance with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA) and Welfare and Institutions Code section 224.2.[1] The Agency concedes that its ICWA inquiry was deficient and agrees a conditional affirmance is appropriate in this case. Father and the Agency have submitted a joint stipulation for issuance of an immediate remittitur pursuant to California Rules of Court, rule 8.272(c)(1). We conditionally affirm the order terminating Father's reunification services with a limited remand for the Agency to comply with ICWA and section 224.2.

FACTUAL AND PROCEDURAL BACKGROUND

The Agency initiated these dependency proceedings on behalf of the children under section 300, subdivision (j), alleging that one of the children had been abused or neglected and that there was substantial risk that the children would be abused or neglected.

A. *ICWA Inquiries Regarding Paternal Family*

Father denied having any Indian ancestry. He subsequently indicated he believed paternal great-grandmother was part of a Cherokee tribe, but he could not remember her name. Father stated he would ask paternal great-aunt K.M. for paternal great-grandmother's name. Father later reported that paternal great-aunt K.M. was in the hospital and had Alzheimer's, and he was not able to ask her about ICWA.

---

[1] All further section references are to the Welfare and Institutions Code, unless otherwise indicated.

2

Paternal half-brother G.S. indicated he did not know of any Indian ancestry in the family, he did not know paternal great-grandmother's name, and he did not know paternal great-aunt K.M. or how to get in touch with her.

Paternal half-sister Y.S. did not know of any Indian ancestry in the family and indicated she did not have a relationship with paternal great-aunt K.M.

Paternal uncle M.S. stated he believed paternal great-great-grandmother was Indian. He stated paternal great-aunt K.M. was the only person who would have more information but he was not able to contact her.

Father informed the Agency that he had seven sisters, G.D., S.S-M., Mat.S., Mari.S., D.S., Si.S., and Marg.S., and told the Agency their names and where they lived.

The Agency sent relative notification letters to nine relatives with the same last name as Father, including individuals identified as paternal aunts, who Father did not name as one of his seven sisters: (1) paternal aunt Sa.S.; (2) paternal aunt Me.S.; (3) paternal uncle M.S.; (4) paternal aunt Mari.S.; (5) paternal half-brother A.S.; (6) paternal half-brother G.S.; (7) paternal half-sister Y.S.; (8) relative F.S.; and (9) relative B.S. The purpose of these letters was to notify the relatives that the children were in protective custody and inquire whether the relatives were interested in placement. None of these relatives other than paternal uncle M.S. responded to the relative notification letters.

The Agency spoke to another paternal aunt J.S., but there is no indication in the record that the Agency asked her about potential Indian ancestry. The Agency also spoke to paternal aunt E.S., who appears to be the same person as J.S.

3

B. *ICWA Inquiries Regarding Maternal Family*

Mother, B.B. (Mother)[2] denied having any Indian ancestry. Maternal grandmother reported that maternal great-great-grandmother was raised on an Oklahoma tribe.

The Agency mailed inquiry letters to the three Cherokee tribes: Cherokee Nation, United Keetoowah Band of Cherokee Indians in Oklahoma, and Eastern Band of Cherokee Indians. The letters list Mother, maternal grandmother, maternal great-grandmother, and maternal great-great-grandmother as potentially having Cherokee ancestry. The letters also provide the names of seven maternal family members and no paternal family members other than Father's name. The Agency received response letters from the Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians in Oklahoma indicating the children were not eligible for membership in the respective tribes.

C. *ICWA Findings*

The court found ICWA did not apply at the contested jurisdiction and disposition hearing.

The court again found that ICWA did not apply when the court removed the children from Father's and Mother's custody.

DISCUSSION

Father argues the Agency failed to comply with its initial inquiry duties under section 224.2, subdivision (b) because it neglected to interview paternal extended family members about the children's possible Indian ancestry. Father also contends the Agency failed to satisfy its further inquiry obligations under section 224.2, subdivision (e), after receiving information giving rise to a reason to believe the children may have Cherokee heritage

---

[2]   Mother is not a party to this appeal.

4

from the paternal side of the family and Indian heritage from the maternal side of the family stemming from an Oklahoma tribe.

## A. *Applicable Law*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.*, at p. 9.) An " 'Indian child' " is defined in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); accord Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*In re D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."

During the first stage of initial inquiry, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county

welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*In re D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049.)

ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

After a "reason to believe" that an Indian child is involved has been established, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e).) The duty of further inquiry includes (1) interviewing the parents, Indian custodian, and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership; and (3) contacting tribes and anyone else who might have information regarding the child's membership or eligibility in a tribe; contact with a tribe "shall include" information identified by the tribe as necessary for the tribe to make a membership or eligibility determination. (*Id.*, subd. (e)(2)(A–C).)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*)

6

B. *Initial Inquiry*

Father argues the Agency failed to satisfy its initial inquiry obligations as to the paternal side of the family because the Agency had contact information for, but did not attempt to interview 12 paternal family members about the children's potential Indian ancestry:  (1) paternal aunt Sa.S.; (2) paternal aunt Me.S.; (3) paternal aunt Mari.S.; (4) relative F.S.; (5) relative B.S.; (6) paternal aunt G.D.; (7) paternal aunt S.S-M.; (8) paternal aunt Mat.S.; (9) paternal aunt D.S.; (10) paternal aunt Si.S.; (11) paternal aunt Marg.S.; and (12) paternal aunt J.S.

In its initial inquiry, the Agency is not obligated to conduct an ICWA inquiry of all family members—only those who qualify as " 'extended family members' " as defined under ICWA.  (See 25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)  The relatives who are identified in the record as paternal aunts qualify as "extended family members" under ICWA.  It is not clear from the record what relation F.S. and B.S. have to the children.

Additionally, the Agency "is not required to 'cast about' for information or pursue unproductive investigative leads."  (*In re D.S., supra,* 46 Cal.App.5th at p. 1053.)  Regarding the first five paternal relatives identified by Father, the record shows the Agency mailed them relative notification letters, but received no response.  Regarding the next six paternal relatives identified by Father, the record shows Father identified them as his sisters and informed the Agency of the city and state where they lived.  It does not appear that he provided the Agency with contact information for them.  If the Agency did not have contact information for or was not able to get into contact with paternal family members, it was not error for the Agency to not conduct an ICWA inquiry of those family members.

7

To the extent the Agency had contact information for, and was able to make contact with paternal family members who qualify as "extended family member" under ICWA, the Agency should ask them about the children's potential Indian ancestry on remand.

Father also argues and the record shows the Agency spoke with paternal aunt E.S.[3] but did not ask her about the children's potential Indian ancestry. Because she qualifies as an "extended family member" under ICWA, the Agency should have asked her about the children's potential Indian ancestry and must do so on remand.

### C. *Further Inquiry*

Father argues the Agency failed to satisfy its further inquiry obligations because the Agency failed to include names of paternal family members (aside from Father's name) in the inquiry letters it sent to the three Cherokee tribes, even though the potential Cherokee ancestry stemmed from the paternal side of the family. Father also argues the Agency should have sent inquiry letters to 25 other federally recognized tribes with Oklahoma in their name because a maternal family member indicated that maternal great-great-grandmother was raised on an Oklahoma tribe. Finally, Agency failed to contact the BIA and the State Department of Social Services for assistance in identifying tribes in which the children may be eligible for membership.

The record shows that the inquiry letters sent to the three Cherokee tribes lists Mother, maternal grandmother, maternal great-grandmother, and maternal great-great-grandmother as potentially having Cherokee ancestry. Additionally, the letters list names of maternal family members, but no

---

[3]    It appears from the record that paternal aunts J.S. and E.S. are the same person, although not identified by Father as such on appeal.

paternal family members aside from Father's name. Because the potential Cherokee ancestry stems from the paternal side of the family, the Agency should have indicated this and included names of paternal family members in the letters to the Cherokee tribes.

Additionally, the record shows maternal grandmother reported that she believed maternal great-great-grandmother was raised by an Oklahoma tribe. There are 28 Federally recognized tribes with Oklahoma in its name. (87 Fed.Reg. 4636-4640 (Jan. 28, 2022).) Although Father indicates that the Agency sent inquiry letters to three of these Oklahoma tribes by sending letters to the three Cherokee tribes, only one Cherokee tribe—the United Keetoowah Band of Cherokee Indians in Oklahoma—has Oklahoma in its name. Thus, the Agency should have sent inquiry letters to 27 other tribes with Oklahoma in its name. Additionally, there may be other tribes located in Oklahoma that do not have Oklahoma in its name. For example, Cherokee Nation is located in Oklahoma. As such, on remand, the Agency should investigate other tribes that are located in Oklahoma and send inquiry letters to them. This investigation should include contacting the BIA and State Department of Social Services for assistance in identifying those tribes. (§ 224.2, subd. (e)(2)(B).)

## DISPOSITION

The juvenile court's order terminating Father's reunification services is conditionally affirmed. The matter is remanded to the juvenile court with directions for the Agency to comply with the inquiry provisions of ICWA and section 224.2 (and, if applicable, the notice provisions under section 224.3). If, after completing its inquiry, neither the Agency nor the juvenile court has reason to believe or reason to know the children are Indian children, the order shall be reinstated. If the Agency or the juvenile court has reason to

know the children are Indian children, the Agency and the juvenile court shall proceed accordingly.  The remittitur shall issue forthwith.

McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


DO, J.